IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | |
|---|---|
| IN RE: )<br>)<br>MICHAEL B. NIFONG, )<br>)<br>Debtor )<br>) | No. B-08-80034 C-7 D<br><br>MEMORANDUM IN OPPOSITION<br>TO MOTION FOR RELIEF FROM STAY |

This memorandum is submitted by the debtor, in opposition to the pending motion filed April 8, 2008 by David F. Evans and others for relief from the stay in order to continue litigation against the debtor in Evans v. City of Durham, No. 1:07 CV 739 (MDNC). The cases cited by the movants are all distinguishable and there is no justification for lifting the stay.

ARGUMENT

Right off the bat the movants note what they see as an inconsistency or contradiction in our position in this Chapter 7 case. Bankruptcy lawyers and judges routinely deal with Chapter 7 cases in which while a particular debt may be disputed, as here, the debtor nonetheless seeks a discharge and fresh start as to such debt. In this case Mike Nifong does not dispute the three secured debts totaling $302,897 in Schedule D or the $8897.71 unsecured debt to the North Carolina State Bar. He does dispute the remaining general unsecured debts in Schedule F, including those to the three movants. Parenthetically those debts were listed at $30 million each because of media reports that they were seeking that amount each altogether from the City of

Durham, the debtor, and the fifteen other defendants named in <u>Evans v. City of Durham</u>. The movants claim the Chapter 7 case was filed in bad faith, or more accurately not in good faith, citing these reasons:

1. The filing was made in part to change the forum of the parties' dispute. We can scarcely deny what Stevie Wonder could see.

2. The filing was made to avoid a jury trial. The movants must be unaware of Rule 9015, Rules of Bankruptcy Procedure.

3. The filing was made to obtain a discharge. Yes, and so too are all other Chapter 7 filings.

4. Such a discharge would free the debtor to avoid responsibility. Again that might well be said of all Chapter 7 filings.

5. A discharge might enable the debtor to sign a lucrative book deal. There is of course no evidence that he has any interest in doing so, or the emotional energy required for such a venture, nor for a play, movie, a musical CD, or an opera (the debtor sings in his church choir and plays the guitar).

The Bankruptcy Administrator clearly saw no lack of good faith in this Chapter 7 case. Evidence of that is his filing on March 11, 2008 of his statement pursuant to 11 U.S.C. 704(b)(2) of no abuse in the Chapter 7 filing. See also 11 U.S.C. 707(b)(3)(A). Had he thought the debtor filed this petition in bad faith, his conclusion would surely have been different. It should be noted too that the Trustee similarly made no good faith objection. Between them the

Bankruptcy Administrator and the Trustee, unlike the three movants, have reviewed perhaps 20,000 such cases over the years.

The movants say they agree (With Whom? When?) to seek enforcement of any judgment only against post-bankruptcy assets or insurance coverage. Are they waiving their right to file a proof of claim by the June 28, 2008 deadline? The Trustee now has $3389 on hand.

The movants state that the debtor's wife is a lawyer. She is not. She is a social worker. That said, the relevance of her profession escapes us.

The movants also state that the debtor and his wife have two USAA homeowners' insurance policies. Not so. They have one such, the details of which have been provided to opposing counsel. And as opposing counsel well knows, the debtor carried no professional liability insurance while a lawyer. They should also know, common sense being allowed here, that the USAA homeowners' policy does not remotely cover anything that might be characterized as prosecutorial misconduct.

As we have noted, the case law relied on by the movants is readily distinguishable. In Re Allred, No. B-03-11315 C-13G (MDNC), decided by this Court on February 24, 2004, involved only state law claims, and post-petition claims at that. Unlike this case, there was no reason for this Court not to lift the stay and allow the parties to litigate their state law post-petition matters in the state court.

Judge Osteen's opinion of February 28, 2007 in Young v. Young, No. 1:06 CV 781 (MDNC) is of value here, if at all, only in dicta. The holding,

having to do with the filing of a proof of claim as a prerequisite to a motion for relief from the stay, is simply not pertinent to this case. It should be noted too that the movants in Young were seeking only non-monetary relief. See also In Re Young, No. 07-1277 (unpublished 4th Cir. April 9, 2008).

In Re Ewald, 298 B.R. 76 (Bkcy. E.D. Va. 2002) was a Chapter 13 case in which state court litigation between the debtor and the National City Mortgage Corporation had been pending for nearly three years before the Chapter 13 case was filed. The litigation in Hanover County, Virginia, involved entirely issues of Virginia state real estate property and foreclosure law, i.e. there was no good reason to grant the motion for relief from the stay. Note also that while the Ewald litigation in Hanover County, Virginia had been pending for nearly three years, the Evans lawsuit here had been pending just over three months when the Chapter 7 case was filed, and was not even at issue. And too, the success of the Chapter 13 plan in Ewald was wholly dependent on the debtor prevailing in the state court litigation. By contrast, in this case, no interested party apart from David Evans and his two colleagues has filed a dischargeability complaint, and the April 8 deadline for such has passed. The case is already a success in that it is a given Mike Nifong will be discharged from all other debts, liquidated and unliquidated alike, including but not limited to any claim of the plaintiffs and/or the 50 other defendants in McFayden v. Duke University, No. 1:07 CV 954 (MDNC), or the fifteen other defendants in Evans v. City of Durham.

In Re Linville, No. B-04-52866 C-7 W (MDNC) is yet another garden variety case seen routinely in this Court, where a non-filing spouse seeks relief from the stay in order to litigate state law matters of equitable distribution and child support where they belong, in the state court. Nothing in Judge Waldrep's opinion of February 1, 2005 helps the movants' case here. It is perhaps worth noting too that the clear language of 28 U.S.C. 1332 notwithstanding, the federal courts have for at least 150 years "disclaimed jurisdiction altogether in the courts of the United States upon the subject of divorce, or for the allowance of alimony", etc., Barber v. Barber, 21 How. 582 at 584, 16 L.Ed.226 (1858). See also Ohio ex Rel. Popovici v. Agler, 280 U.S. 379, 50 S.Ct. 154, 74 L.Ed.489 (1950) and Albanese v. Richter, 161 F.2d 688 (3rd Cir. 1947).

In Re Meredith, 337 B.R. 574 (Bkcy. E.D. Va. 2005) is an interesting case, unique maybe, but of no applicability here. The debtor, a CPA, had a $200,000 defamation judgment entered against him, in favor of another CPA, in the Virginia state court, pre-petition. The motion for relief from the stay in the Chapter 7 case was filed not by the judgment creditor but by Meredith, the Chapter 7 debtor and judgment debtor, seeking to pursue post-trial remedies in the state court, including a motion for reconsideration of the judgment, and to appeal if need be to the Virginia Supreme Court. The stay was of course lifted by the Bankruptcy Court in Richmond, in large part due to the Rooker-Feldman doctrine prohibiting lower federal courts from sitting in review of state court judgments.

5

Nor is Judge Howard's opinion in Cudmore v. Howell, 232 B.R. 335 (EDNC 1999) applicable now to the case at hand. While he did not cite the Rooker-Feldman doctrine, it clearly applied in what was at heart a garden variety collateral estoppel case. Cudmore had a state court judgment entered against him prepetition, a judgment in which punitive damages were awarded. Under both Carolina law punitive damages are only awarded "where the conduct of the defendant was willful, aggravated, malicious, or of a wanton character," Horner v. Byrnett, 511 S.E.2d 342 (NC App. 1999). Cudmore failed to appeal and the judgment became final, all well before he filed his Chapter 7 petition. Collateral estoppel, Judge Small and Judge Howard found, clearly applied, and of course Rooker-Feldman prevented either from disturbing the state court judgment against Cudmore.

Judge Ervin's opinion for the court in the great case of Harry Robbins of Tweetsie Railroad fame in Blowing Rock, Robbins v. Robbins, 964 F.2d.342 (4th Cir. 1992) is another domestic relations case. The parties' equitable distribution proceeding had been pending in Florida for over two years. It had gone to the Florida Court of Appeals and a special master on remand ruled against Harry to the tune of $2 million plus. Harry then filed a Chapter 11 case in Asheville, and his former wife of course sought relief from the stay in order to wrap up the Florida matters. The Bankruptcy Court and the District Court ruled against Harry, who fought the lifting of the stay, and Harry proceeded to Richmond, where he lost yet again. The importance of Robbins

6

for the case at hand is entirely in the factors the Court set out to be considered and weighed in a case of this nature:

    A. Whether the issues of the pending litigation involve only state law, so the expertise of the Bankruptcy Court is unnecessary. Unlike the legal aftermath of the breakup of the Robbins' 40 year marriage in Florida, the case here, <u>Evans v. City of Durham</u>, involves primarily, perhaps entirely, <u>federal</u> law, for the most part surrounding the Reconstruction Civil Rights Acts. The key issue here is the question of whether in the Duke lacrosse prosecutions, Mike Nifong acted willfully <u>and</u> maliciously, within the context of 11 U.S.C. 523(a)(6). In a nutshell, that is what the fuss is about here, not Florida or North Carolina domestic relations law. Note also the heavy emphasis in the complaint in <u>Evans v. City of Durham</u> on equitable relief, injunctive relief. The plaintiffs essentially seek to put the Durham Police Department in receivership, but <u>no</u> equitable relief is sought against Mike Nifong.

    B. Whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in the Bankruptcy Court. Judicial economy is already the big loser in this case, though it could get worse. If the stay were lifted, <u>Evans v. City of Durham</u> would then proceed apace in the District Court with the full complement of 15 defendants rather than the 14 defendants,

7

Case 08-80034   Doc 28   Filed 04/22/08   Page 7 of 11

including the only deep pockets, already counted as present. It is a sure bet that the case will go to the Court of Appeals in Richmond, and likely to the Supreme Court in Washington. It has every promise of bouncing back and forth for some years, not unlike the recent case of Anson Dorrance, the soccer coach at UNC Chapel Hill, which took only ten years to resolve. In the meanwhile the Chapter 7 case here would remain in limbo, for years. Now suppose the stay were not lifted. This Court would then have to deal with the pending adversary proceeding, Evans v. Nifong, No. AP 08-9015, but there are lots of ways to do this, with judicial creativity and the parties' cooperation and consent. Much, for example, could be stipulated, and a special master utilized to resolve what the parties could not agree on.

C. Whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the Bankruptcy Court, i.e. as is routinely done in domestic relations cases. In the case at hand the bankruptcy estate consists of $3389, before any Trustee's commission, and is decidedly unlikely to grow. In this case this Robbins factor is pretty much a non-issue.

The movants note that Mike Nifong will likely have to testify, if called upon in whatever forum these cases are resolved. To quote the Vice President, so what? Any of us who are witnesses to litigated events run that risk and are subject to subpoena. The debtor has at no time evidenced any reluctance to

testify, if called upon to do so. Indeed he is unemployed, with little else to do. The Robbins factors we suggest mitigate against lifting the stay here.

Had the movants not cited Kawaauhau v Geiger, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed2d 90 (1998), we would have done so, for we believe it fits the case like a glove. Look at Dr. Geiger's conduct in his treatment of Margaret Kawaauhau. It is outrageous in the extreme, and it is a wonder the $355,000 malpractice judgment against him wasn't higher. Dr. Geiger carried no professional liability insurance.[1] Mrs. Kawaauhau understandably felt aggrieved and sought to have the malpractice debt declared nondischargeable in his Missouri bankruptcy case. The Bankruptcy Court and the District Court in St. Louis ruled in her favor, but the Eighth Circuit reversed, and the Supreme Court unanimously held that the injury to Mrs. Kawaauhau was recklessly and negligently inflicted, and thus dischargeable under 11 U.S.C. 523(a)(6). See also Tinker v. Colwell, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed.754 (1904), distinguished in part because of its emphasis on common law forms of action.

Kawaauhau is in many ways our case here. The movants will doubtless spring now to the disbarment and contempt orders, which they have filed with this Court, in an effort to distinguish the conduct of Dr. Geiger in Kawaauhau from the conduct of Mike Nifong in the Duke lacrosse case. Those orders are damming in their language, but they both stop just short of the willful and malicious standard of 11 U.S.C. 523 (a)(6).

---

[1] Nor did Mike Nifong, but likely few if any prosecutors do.

9

## CONCLUSION

The movants here, certainly their counsel, have to know they will never collect so much as $35 from Mike Nifong. They must know that, yet still they come.[2] For all the reasons set forth above, the Court should deny the motion for relief from the stay.

Respectfully submitted,

/s/ James B. Craven III
James B. Craven III
Attorney for the Debtor
NC State Bar 997
(919) 688-8295
P.O. Box 1366
Durham, NC 27702

---

[2] The answer may lie in The Merchant of Venice, Act IV, Scene I, where Bassanio offers Shylock twice the amount owed, in cash, yet Shylock insists on a pound of Antonio's flesh. And yes, to paraphrase Portia, we do think it is perhaps time for mercy here, and forgiveness, and healing. All these lives must go on.

CERTIFICATE OF SERVICE

I have this day mailed copies of this memorandum to interested parties and counsel, as follows:

    Sara A. Conti, Esquire
    Chapter 7 Trustee
    Box 939
    Carrboro, NC 27510

    Charles Davant IV, Esquire
    Williams & Connolly
    725 Twelfth Street, NW
    Washington, DC 20005

    David S. Rudolf, Esquire
    Rudolf, Widenhouse & Fialko
    312 West Franklin Street
    Chapel Hill, NC 27516

    Mr. Michael B. Nifong
    615 November Drive
    Durham, NC 27712

This 22nd day of April 2008.

                                          /s/ James B. Craven III
                                          James B. Craven III